**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JESSICA POLITO,

                       Plaintiff,

      v.

CAMBRIDGE INTERNATIONAL PARTNERS LLC, DAVID W. ABBOTT and RICHARD H. HAYWOOD, JR. in their individual and professional capacities,

                       Defendants.
------------------------------------------------------------X

Civil Action No.:
20-cv-08515(ALC)(RWL)

**AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiff Jessica Polito ("Polito"), as and for her Amended Complaint against Defendants Cambridge International Partners LLC ("Cambridge" or the "Firm"), David W. Abbott ("Abbott") and Richard H. Haywood, Jr. ("Haywood") (together, "Defendants"), hereby alleges as follows:

## PRELIMINARY STATEMENT

1. Women who are mothers often face an uphill climb in the workplace, especially in the male-dominated financial services industry. Their accomplishments burn less bright, their challenges become more pronounced and their careers are somehow less valuable than those of their male counterparts. After all, in the view of too many, women with families are not as committed and can always rely on their husbands. Even women who gain entry to the executive suite after many years of hard work, often experience a swift fall from grace once their employers learn of their expanding families. Jessica Polito is one of these women.

2. For eight years, beginning in 2010, Polito worked tirelessly as she rose through the ranks at Cambridge, a mergers and acquisitions firm run by two men, Abbott and Haywood. In 2018, she earned the right to be recognized as a Partner, including receiving a share of Firm

profits. Throughout her ascent, Polito had no children or only one child. Unfortunately for Polito, her climb ended the moment in 2018 that she told Abbott and Haywood of her expanding family. The two men promptly cut her compensation and began to deny Polito important client opportunities. The next year, after Polito announced yet another addition to her family, Abbott and Haywood told Polito that it was a "mistake" to make her a Partner and complained about Polito's "attitude" since returning from her latest maternity leave. The false criticism was accompanied by yet another cut in pay. In 2020, Abbott and Haywood fired Polito, only the second high-level female executive in the Firm's thirty-year history. For Polito, a career that took almost a decade to build was over.

3. Defendants' conduct violated the equal pay, anti-discrimination and anti-retaliation provisions of the Equal Pay Act, 29 U.S.C. § 206 *et seq.* ("EPA"); New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and the New York State Pay Equity Law, N.Y. Lab. Law § 194 *et seq.* ("NYSPEL").[1]

## JURISDICTION AND VENUE

4. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves federal questions under the EPA.

5. The Court has supplemental jurisdiction over the Local Laws claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

---

[1] The NYSHRL, NYSPEL and NYCHRL are referred to collectively as the "Local Laws."

## ADMINISTRATIVE PROCEDURES

7. Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of that section.

8. Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

9. Plaintiff Polito was a Vice President at Cambridge and was, at all relevant times, an "employee" under the EPA and Local Laws.

10. Defendant Cambridge International Partners, LLC is a foreign corporation incorporated in Delaware with its principal office in New York, New York. Cambridge was, at all relevant times, an "employer" under the EPA and Local Laws.

11. Defendant David W. Abbott is the President of Cambridge. Abbott was, at all relevant times, an "employer" within the meaning of the EPA and Local Laws. Abbott also participated in the unlawful conduct described herein.

12. Defendant Richard H. Haywood, Jr. is the Managing Director at Cambridge. Haywood was, at all relevant times, an "employer" within the meaning of the EPA and Local Laws. Haywood also participated in the unlawful conduct described herein.

## FACTUAL ALLEGATIONS

### I. BACKGROUND

13. In 2009, Polito graduated from Babson College. Thereafter, she joined Staples, Inc. ("Staples"), as a Financial Analyst in the Corporate Development division where she quickly established herself as a high performer.

14. In 2010, Cambridge recruited Polito based on her strong academic credentials and work experience, and she agreed to join Cambridge as an Analyst.

15. Cambridge advises the investment management industry regarding mergers and acquisitions.

16. Polito excelled at Cambridge. She analyzed financial transactions and price structuring, conducted discounted cash flow analysis and generated valuations for clients related to potential mergers and acquisitions. Polito also maintained Cambridge's database dedicated to proprietary transactional analysis. Additionally, Polito created pitch books for potential clients and confidential memoranda for existing clients.

17. Polito regularly received positive feedback for her performance and, as a result of her hard work and dedication, earned a promotion to Associate in April 2013. In her new role, Polito assisted Managing Directors in providing transactional advice to clients, and managed due diligence data rooms and the Firm's analysts.

18. In April 2017, Polito earned another promotion to Vice President after only seven years in the investment banking industry. She excelled at her new job responsibilities, which included cultivating new relationships for the Firm and overseeing client relationships from inception to closing. Polito also helped lead several deal projects.

19. In April 2018, Polito had her annual review where she, once again, received stellar marks. During the review, Haywood and Abbott, Cambridge's two most senior executives who made all significant decisions for the Firm, informed Polito that Partner John Temple was retiring and that the Firm was putting her on a Partner track, which typically takes two years before she can "buy in."

20. However, the Firm decided to accelerate Polito's promotion because of her excellent performance. Polito would be treated as a Partner, including being held out and compensated as a Partner. She would also do the work of a Partner. In return, she would earn a $125,000 annual salary, a percentage of the Firm's profits plus an additional percentage for deals she worked on. In addition, the promotion entitled her to a $100,000 annualized guaranteed payment.[2]

## II. POLITO DISCLOSES HER PREGNANCY

21. At the end of the review meeting, Polito shared that she was pregnant with her second child.

22. While Haywood and Abbott purported to congratulate Polito, their body language and facial expressions made it obvious that they were concerned about having a pregnant Partner and soon-to-be mother to two small children.

23. A few days later, Haywood and Abbott unexpectedly called a meeting with Polito. They told her that the Firm had decided to reduce her $100,000 annualized guaranteed payment because of her maternity leave. Haywood and Abbott also reneged on their promise to treat Polito like a Partner.

24. For instance, the Firm began excluding her from new deals, which substantially diminished her Partner compensation. Moreover, these actions diminished Polito's visibility as a Partner and decreased her ability to generate new leads. Indeed, Polito was only staffed on two deals, both of which she had helped to originate.[3]

---

[2] During this meeting, Haywood and Abbott admitted that they had underpaid Polito in the past. They appeared proud that the increase would finally bring Polito's compensation to where it should have been.

[3] The Firm typically staffs two Partners on each deal, including the originating Partner.

**III.    THE FIRM SLASHES POLITO'S COMPENSATION**

25.     From October 2018 to January 2019, Polito was on maternity leave.

26.     In April 2019, Polito had her first annual review after giving birth. During the meeting, Polito disclosed that she was pregnant with her third child. She also explained that she was suffering from a disability.

27.     Polito developed a cyst on her ovary that prevented her from traveling because the cyst could rupture and endanger her life and the life of her unborn child. However, Polito explained that she had recently been cleared for travel to clients and potential clients outside of New York.

28.     Abbott and Haywood responded with discriminatory comments suggesting that, as a married woman with children, Polito was not dedicated to her job. For example, Haywood declared that Polito's husband "makes a lot of money" and asked whether Polito was "going to quit and stay home with the kids?" Abbott admitted that "we thought you were going to quit."

29.     This was not the first time that the Firm's male executives expressed their discriminatory beliefs that, as a woman, Polito should focus on her husband and family, not her career.

30.     For example, Haywood had previously asked Polito, "If you want something expensive won't Tex [Polito's husband] just buy it for you?"

31.     Haywood also posited to Polito, "You don't need to work, Tex can take care of you."

32.     Polito never heard such comments being made about men, even those who were married with children.

6

33. Shortly thereafter, Polito was unexpectedly called into a meeting with Haywood and Abbott, who began to criticize her performance. They stated that the Firm made a "mistake" promoting her to Partner. They also complained about Polito's "attitude" since she returned to work after giving birth.

34. During the meeting, Haywood and Abbott told her that they had decided to strip her of the Partner compensation that had been granted to her before she disclosed her latest pregnancy. Thus, while Polito's responsibilities as Partner would remain the same, she would no longer be compensated as Partner and receive a percentage of profits. Rather, she would receive a "discretionary" bonus to be decided by Haywood and Abbott.

35. The Firm also prepared to fire Polito. For example, despite having a banner year, Haywood and Abbott continued to refuse to staff Polito on any new deals except, as best she can recall, one instance where Abbott admitted that he was simply too busy.

36. In February 2020, when Polito returned from maternity leave, the Firm started to remove Polito's back office responsibilities.

37. Around the same time, the Firm hired a man without family responsibilities to start as an Analyst in Summer 2020 because, according to Abbott and Haywood, the Firm was very busy.

38. In mid-March 2020, as the COVID-19 pandemic escalated, Cambridge closed its office and all employees began working remotely from home, including contacting existing and potential clients by phone or video conference.

39. Nonetheless, the Firm instructed Polito not to make any such calls or engage in any marketing unless she knew the prospects well and only to "check in" regarding the pandemic.

40. In short, the Firm stymied Polito's ability to perform her job. Haywood and Abbott, of course, faced no such limitations and they both continued to contact prospective clients remotely.

## IV. THE FIRM FIRES POLITO

41. On September 15, 2020, Abbott and Haywood fired Polito because, according to them, the Firm was unhappy with her marketing and business development.

42. In fact, as explained above, the Firm actively prevented Polito from performing these tasks after she gave birth to her last child.

43. The day after dismissing Polito, the Firm's newly-hired male Analyst started working.

44. As a result, the Firm no longer employed a single non-clerical female staff member.

45. The virtually all-male environment is typical of Cambridge. During Polito's decade plus tenure, she was the only full-time female staff member.

46. She tried over the years to break the discriminatory pattern by proposing that the Firm hire qualified female analysts. Haywood and Abbott did not consider these women for employment, often refusing to even meet with them.

47. Polito is aware of only one non-clerical female employee in the Firm's over 30-year history. Cambridge's sole female Partner prior to Polito lasted in the male-dominated environment for about a year and left on bad terms. Indeed, Haywood and Abbott continue to disparage this female Partner long after her departure.

48. In an obvious attempt to hide its unlawful conduct, the Firm offered to pay Polito if she agreed not to pursue her legal claims. She would also be required to keep secret the Firm's unlawful behavior and agree never to say anything negative about Cambridge.

49. In addition, the Firm threatened to place a negative mark on Polito's professional industry registration by publishing that she had been "discharged" from Cambridge, which would seriously diminish – if not end – Polito's career in the industry.

50. On October 29, 2020, only 16 days after Polito filed this action alleging discrimination and retaliation, the Firm followed through on its threat.

## **FIRST CAUSE OF ACTION**
### (Discrimination in Violation of the EPA)
*Against All Defendants*

51. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

52. By the acts and practices described above, Defendants violated the EPA by paying male employees higher wages than Plaintiff for substantially equal work in a job which required equal skill, effort and responsibility, and which was performed under similar working conditions.

53. Defendants' conduct was willful and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

54. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the EPA)
*Against All Defendants*

55.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

56.     By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the EPA.

57.     Defendants' conduct was willful and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

58.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)
*Against All Defendants*

59.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

60.     By the acts described above, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex and her familial status in violation of the NYSHRL.

61.     Defendants' conduct was willful and they knew that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

62.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

63. Plaintiff is further entitled to an award of punitive damages as Defendants' unlawful conduct was and remains reckless, wanton and/or malicious.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

64. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

65. By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYSHRL.

66. Defendants' conduct was willful and they knew that their actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

67. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

68. Plaintiff is further entitled to an award of punitive damages as Defendants' unlawful conduct was and remains reckless, wanton and/or malicious.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)
*Against All Defendants*

69. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

70. By the acts described above, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex and her status as a caregiver in violation of the NYCHRL.

71. Defendants' conduct showed willful and/or wanton negligence, recklessness and conscious disregard for Plaintiff's statutorily protected rights.

72. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

73. Plaintiff is further entitled to an award of punitive damages as Defendants' unlawful conduct was and remains reckless, wanton and/or malicious.

### SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)
*Against All Defendants*

74. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

75. By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYCHRL.

76. Defendants' conduct showed willful and/or wanton negligence, recklessness and conscious disregard for Plaintiff's statutorily protected rights.

77. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

78. Plaintiff is further entitled to an award of punitive damages as Defendants' unlawful conduct was and remains reckless, wanton and/or malicious.

### SEVENTH CAUSE OF ACTION
### (Violations of NYSPEL)
*Against All Defendants*

79. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

80. By the acts and practices described above, Defendants violated the NYSPEL by paying male employees higher wages than Plaintiff for substantially similar work based on a

composite of skill, effort and responsibility, and which was performed under similar working conditions.

81. Defendants' conduct was willful and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

82. Plaintiff has suffered and will continue to suffer damages as a result of Defendants' willful and unlawful conduct unless and until this Court grants relief.

## EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of NYSPEL)
*Against Defendant Cambridge*

83. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

84. By the acts described above, Defendants retaliated against Plaintiff for engaging in protected activity under the NYSPEL.

85. Defendants' conduct was willful and they knew that their actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

86. Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a Judgment:

A. declaring the acts and practices complained of herein to be violations of the EPA, the NYSPEL, the NYSHRL and the NYCHRL;

B. enjoining and permanently restraining these violations of the EPA, the NYSPEL, the NYSHRL and the NYCHRL;

  C. directing Defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

  D. directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment of her, and making her whole for all earning and other benefits she would have received but for Defendants' discriminatory treatment, including but not limited to wages, including back pay and front pay, bonuses and other lost benefits;

  E. directing Defendants to pay Plaintiff liquidated damages for their violations of the EPA and the NYSPEL;

  F. directing Defendants to pay Plaintiff compensatory damages including damages for emotion distress, humiliation, pain and suffering and injury to professional standing and reputation;

  G. directing Defendants to pay Plaintiff additional amounts as punitive damages;

  H. awarding Plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

  I. awarding Plaintiff the costs of this action, together with reasonable attorneys' fees; and,

  J. awarding such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiff demands a trial by jury in this action.

Dated: January 5, 2021
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Valdi Licul
    Taylor J. Crabill

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
tcrabill@wigdorlaw.com

*Attorneys for Plaintiff*